## No. 24-3259

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

WORLD VISION INC.,

*Defendant-Appellant,*

v.

AUBRY MCMAHON,

*Plaintiff-Appellee.*

On Appeal from the United States District Court for the
Western District of Washington
Case No. 2:21-cv-00920
District Judge James L. Robart

**BRIEF OF AMICUS CURIAE STATE OF MONTANA AND
16 OTHER STATES SUPPORTING DEFENDANT-APPELLANT
AND REVERSAL**

AUSTIN KNUDSEN
  *Attorney General of Montana*

CHRISTIAN B. CORRIGAN
  *Solicitor General*

PETER M. TORSTENSEN, JR.
  *Deputy Solicitor General*

MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
(406) 444-2026
christian.corrigan@mt.gov
peter.torstensen@mt.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................ii

INTERESTS OF AMICI CURIAE .......................................................................1

STATEMENT OF THE CASE .............................................................................2

SUMMARY OF THE ARGUMENT ....................................................................6

ARGUMENT .....................................................................................................6

I. McMahon's claims are barred by church autonomy. ...............................6

    A. The doctrine protects religious organizations. ................................6

    B. The doctrine applies to personnel decisions based on religious doctrine. ..............................................................................................9

CONCLUSION .................................................................................................14

ADDITIONAL COUNSEL ...............................................................................16

CERTIFICATE OF COMPLIANCE ..................................................................17

## TABLE OF AUTHORITIES

## Cases

*Bell v. Presbyterian Church (U.S.A.),*
126 F.3d 328 (4th Cir. 1997) ............................................................ 2

*Bouldin v. Alexander,*
82 U.S. (15 Wall.) 131 (1872) ........................................................ 10

*Brazauskas v. Fort Wayne-S. Bend Diocese, Inc.,*
796 N.E. 2d 286 (Ind. 2003) ........................................................ 11

*Bryce v. Episcopal Church in the Diocese of Colo.,*
289 F.3d 648 (10th Cir. 2002) ............................................. 6, 10, 11

*Butler v. St. Stanislas Kostka Cath. Acad.,*
609 F. Supp. 3d 184 (E.D.N.Y. 2022) .................................... 12, 14

*Conlon v. Intervarsity Christian Fellowship/USA,*
777 F.3d 829 (6th Cir. 2015) .............................................. 6, 9

*Corp. of Presiding Bishop v. Amos,*
483 U.S. 327 (1987) ................................................................ 10, 11

*EEOC v. Townley Eng'g & Mfg. Co.,*
859 F.2d 610 (9th Cir. 1988) .............................................. 7

*Garrick v. Moody Bible Inst.,*
412 F. Supp. 3d 859 (N.D. Ill. 2019) ............................ 11, 12, 13

*Grussgott v. Milwaukee Jewish Day Sch., Inc.,*
882 F.3d 655 (7th Cir. 2018) ............................................ 14

*Hollins v. Methodist Healthcare, Inc.,*
474 F.3d 223 (6th Cir. 2007) ..................................... 6-7, 8, 9, 10

*Hosanna-Tabor v. EEOC*
565 U.S. 171 (2012) ..................................................... 6, 9

*Kedroff v. St. Nicholas Cathedral,*
344 U.S. 94 (1952) .......................................................... 1, 2

*Korte v. Sebelius,*
735 F.3d 654 (7th Cir. 2013) ............................................................. 6

*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,*
503 F.3d 217 (3d Cir. 2007) ............................................................. 7

*Natal v. Christian & Missionary All.,*
878 F.2d 1575 (1st Cir. 1989) ................................................. 9, 12, 15

*NLRB v. Cath. Bishop of Chi.,*
440 U.S. 490 (1979) ................................................................. 12, 13

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
591 U.S. 732 (2020) ......................................................... 2, 6, 10, 13

*Paul v. Watchtower Bible & Tract Soc'y of N.Y., Inc.,*
819 F.2d 875 (9th Cir. 1987) ........................................................... 10

*Penn. v. N.Y. Methodist Hosp.,*
884 F.3d 416 (2d Cir. 2018) ............................................................. 8

*Scharon v. St. Luke's Episcopal Presbyterian Hosp.,*
929 F.2d 360 (8th Cir. 1991) ......................................................... 8-9

*Serbian E. Orthodox Diocese v. Milivojevich,*
426 U.S. 696 (1976) .................................................................... 1, 2

*Shaliehsabou v. Hebrew Home of Greater Wash., Inc.,*
363 F.3d 299 (4th Cir. 2004) .......................................................... 8, 9

*Sterlinkski v. Cath. Bishop of Chi.,*
934 F.3d 568 (7th Cir. 2019) ........................................................... 14

iii

## INTERESTS OF AMICI CURIAE

The church autonomy doctrine protects religious organizations' freedom "to decide for themselves, *free from state interference*, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952) (emphasis added). This doctrine protects states as well: It allows religious organizations to conduct their internal affairs, and it protects states from becoming "entangled in essentially religious controversies." *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709 (1976). To ensure that courts maintain clear standards for determining when the First Amendment's church autonomy doctrine applies to employment-discrimination claims and to prevent state entanglement with religious affairs, the States of Montana, Alabama, Arkansas, Florida, Idaho, Iowa, Kansas, Louisiana, Mississippi, Missouri, Nebraska, Ohio, Oklahoma, South Carolina, Tennessee, Texas, and Utah ("Amici States") submit this amicus brief in support of Defendant-Appellant. Amici States urge this Court to reverse.

STATEMENT OF THE CASE

The church autonomy doctrine enables religious organizations "decide for themselves, free from state interference, matters of church governance as well as those of faith and doctrine." *Kedroff*, 344 U.S. at 116; *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 737 (2020) (cleaned up). So "courts must defer to the decisions of religious organizations 'on matters of discipline, faith, internal organization, or ecclesiastical rule, custom or law.'" *Bell v. Presbyterian Church* (*U.S.A.*), 126 F.3d 328, 330-31 (4th Cir. 1997). This deference protects religious organizations and states: it protects religious organizations freedom to manage their internal affairs and prevents states from becoming embroiled in "religious controversies." *Milivojevich*, 426 U.S. at 709.

World Vision is a "Christian Ministry dedicated to sharing the gospel of Jesus Christ, primarily through humanitarian outreach to children and families around the world who are poor and underserved." 3-ER-438, ¶18. It operates like a church and implements its programs through support from local churches domestically and abroad. *Id.* World Vision's Articles of Incorporation state that the "primary, exclusive, and only purposes for which this corporation is organized are religious ones,"

2

including conducting missionary services, teaching and preaching the gospel, encouraging and aiding the growth and spread of Christianity, and serving the material and spiritual needs of the sick, aged, and homeless. *Id.* ¶19. And World Vision requires all its employees to "continually and steadfastly uphold and maintain" its statement of faith. 3-ER-439, ¶20.

Because its employees' conduct "witnesses, reflects, and testifies about what [it] believes as a ministry," 3-ER-447, ¶37, World Vision requires its employees to "[f]ollow the living Christ, individually and corporately in faith and conduct, publicly and privately, in accord with the teaching in His Word (the Bible)," 3-ER-447, ¶38 (citation omitted). To that end, World Vision provides Standards of Conduct ("SOC") to "clarify expectations and assist candidates/employees in deciding whether [World Vision] is the right place for them to serve the Lord." 3-ER-448, ¶40 (citation omitted). And among those standards is World Vision's view of Biblical marriage: that the Bible allows the "express[ion of] sexuality solely within a faithful marriage between a man and a woman." 3-ER-448–49, ¶¶41-42 (citations omitted); *see also* 3-ER-449, ¶44 (any sexual conduct outside this "Biblical covenant" represents "open, ongoing,

unrepentant" sin). So World Vision's SOC prohibits "sexual conduct outside the Biblical covenant of marriage between a man and a woman." 3-ER-450, ¶46 (citation omitted).

To be eligible for employment at World Vision, prospective employees must at a minimum be willing and able to affirm and comply with World Vision's Statement of Faith and SOC. 3-ER-446, ¶34.

McMahon, an "openly gay woman," married her then-girlfriend in September 2020, and she became pregnant around June 2020 through a sperm donor from a "cryobank." 1-ER-8 (citations omitted). She applied for a customer service representative position in late November 2020, 1-ER-17, and the position stated that the eventual employee would "[h]elp carry out our Christian organization's mission, vision and strategies." 1-ER-13 (citations omitted). And the employee would also be required among other things to "[k]eep Christ central in [her] individual … [life]"; attend devotions, chapel services, and prayer; and pray with donors as appropriate. 1-ER-13 (citations omitted). Following an interview process, McMahon was offered the job in January 2021. *See* 3-ER-435–36, ¶¶7-8.

4

That same day, McMahon emailed World Vision to inform them that she and her wife were expecting their first child and to see if she would be eligible for any time off. 3-ER-436, ¶9; 1-ER-80. McMahon's email triggered an internal review because it "indicated potential non-compliance with World Vision's [SOC] and related policies surrounding World Vision's deeply held religious conviction that sexual conduct should not be outside marriage and that marriage was a Biblical covenant between a man and a woman." 3-ER-436, ¶10. World Vision's senior management held internal discussions about applying its Biblical marriage policy to McMahon and ultimately withdrew her offer because she could not comply with the SOC prohibiting sexual conduct outside a Biblical marriage. 3-ER-436–37, ¶¶11-12.

McMahon then sued World Vision, alleging that the withdrawal of her offer violated federal and state anti-discrimination laws. The district court ultimately awarded summary judgment to McMahon, rejecting among other defenses World Vision's claim to protection under the church autonomy doctrine.

### SUMMARY OF THE ARGUMENT

The church autonomy doctrine marks a "boundary between two separate polities"—"the secular and the religious"—and it requires civil courts to accept religious organizations' resolution of internal religious disputes as binding and outside their sphere. *Korte v. Sebelius*, 735 F.3d 654, 677 (7th Cir. 2013). The doctrine isn't limited to churches and religious schools but also applies to religious organizations whose "mission is marked by clear or obvious [religious] characteristics." *Conlon v. Intervarsity Christian Fellowship/USA*, 777 F.3d 829, 833-34 (6th Cir. 2015) (citation omitted). And it applies broadly to religious organizations' "personnel decision[s] based on religious doctrine." *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 658-60 & n.2 (10th Cir. 2002). The doctrine thus protects World Vision's decision to withdraw McMahon's employment offer based on its religious doctrine and the district court's contrary ruling should be reversed.

### ARGUMENT

## I. McMahon's claims are barred by church autonomy.

### A. The doctrine protects religious organizations.

While the church autonomy doctrine applies to churches and religious schools, *see, e.g.*, *Our Lady*, 591 U.S. at 746; *Hosanna-Tabor v.*

6

*EEOC*, 565 U.S. 171, 186 (2012), it also applies to organizations whose "purpose and character are primarily religious," *see EEOC v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 618 (9th Cir. 1988). In evaluating whether an organization is secular or religious, courts weigh "[a]ll significant religious and secular characteristics." *Id.* And that includes considering various factors like the organization's mission statement, whether it holds itself out as secular or religious, whether a religious entity participates in the organization's management, whether coreligionists make up its membership or provide support to the organization, and more. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 221, 226-29 (3d Cir. 2007). But this inquiry into whether an organization is "sufficiently religious" must be undertaken with care to avoid impermissible entanglement with religion. *See id.* at 229-30 (declining to "hold that the [organization was] a center for Jewish culture rather than religion … because to engage in such an analysis would risk precisely the sort of state entanglement with religion that the Supreme Court has repeatedly warned against").

*Conlon* is instructive. There, the Sixth Circuit considered whether InterVarsity Christian Fellowship ("IVCF")—an on-campus Christian

7

organization—was a "religious group" under *Hosanna-Tabor*. 777 F.3d at 833-34. The court held it "clearly" was. *Id.* at 834. It didn't matter that IVCF wasn't a "traditional religious organization such as a church, diocese, or synagogue, or an entity operated by a traditional religious organization." *Id.* (quoting *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 225 (6th Cir. 2007)). What mattered was that its "mission [was] marked by clear or obvious religious characteristics," *id.* (quoting *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 310 (4th Cir. 2004))—that is, "its mission of Christian ministry and teaching." *Id.* So IVCF was entitled to invoke the ministerial exception to Title VII under *Hosanna-Tabor*.

Other cases confirm this focus on the organization's mission. Looking to the organizations' missions, rather than the religious status of the entity, courts have held that a variety of religiously affiliated entities are "religious groups" and thus entitled to exemptions from federal anti-discrimination statutes and related laws. *See, e.g.*, *Hebrew Home*, 363 F.3d at 310 (Jewish nursing home); *Penn. v. N.Y. Methodist Hosp.*, 884 F.3d 416, 425 (2d Cir. 2018) (Methodist hospital); *Hollins*, 474 F.3d at 225 (Methodist hospital); *Scharon v. St. Luke's Episcopal Presbyterian Hosp.*,

929 F.2d 360, 362 (8th Cir. 1991) (Episcopal Presbyterian hospital); *see also, e.g., Natal v. Christian & Missionary All.,* 878 F.2d 1575, 1576-77 (1st Cir. 1989) (non-profit religious corporation).  In each case, the organization's mission was "marked by clear or obvious religious characteristics."  *See Hebrew Home*, 363 F.3d at 310.

So too here.  World Vision is a "Christian ministry … dedicated to sharing the gospel … through humanitarian outreach" and it "operates in many ways like a Christian church."  3-ER-438, ¶18.  It requires current and prospective employees to affirm and comply with its statement of faith, SOCs, and "core religious principles," *see* 3-ER-438–40, ¶¶19-22; 3-ER-441, ¶26; 3-ER-446, ¶34, including its view that marriage is a "Biblical covenant" between a man and woman.  3-ER-449–49, ¶¶41-42.  At bottom, World Vision's mission is no doubt "marked by clear or obvious religious characteristics" and is thus a "religious group" under *Hosanna-Tabor*.  *Conlon*, 777 F.3d at 834 (citation omitted).

## B. The doctrine applies to personnel decisions based on religious doctrine.

The ministerial exception—a "component" of the church autonomy doctrine—bars claims brought by employees who perform important religious duties.  *Our Lady*, 591 U.S. at 746.  For good reason: these

9

employees play an important "role in conveying the [religious group]'s message and carrying out its mission." *Hosanna-Tabor*, 565 U.S. at 174, 192. But the church autonomy doctrine extends beyond the ministerial exception to "matters of internal government," *Our Lady*, 591 U.S. at 747, including religious decisions about employment qualifications. When religious organizations make "personnel decision[s] based on religious doctrine"—even if the employee is not a "minister"—the "broader church autonomy doctrine" applies. *Bryce*, 289 F.3d at 656-58 & n.2.

Courts have no power or authority "to revise or question ordinary acts of church discipline … or excision from membership." *Bouldin v. Alexander*, 82 U.S. (15 Wall.) 131, 139 (1872); *see also, e.g.*, *Paul v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 819 F.2d 875, 883 (9th Cir. 1987) (church members "concluded that they no longer want to associate with her" and "they are free to make that choice"). And that extends to employment decisions related to employees who represent the religious group publicly and that carry out its mission. Requiring that "only those committed to [an organization's religious] mission" should conduct its activities is one way "a religious community defines itself." *Corp. of Presiding Bishop v. Amos*, 483 U.S. 327, 342 (1987) (Brennan, J., concurring).

And courts permit these conditions because it is "vital that, if certain activities constitute part of a religious community's practice, then a religious organization should be able to require that only members of its community perform" them. *Id.* at 342-43.

*Bryce* is instructive. There, a church employee alleged that church officials' statements opposing homosexuality and her same-sex marriage constituted sex discrimination under Title VII. 289 F.3d at 651-53. But the Tenth Circuit sidestepped the "ministerial exception" and instead held that the "broader church autonomy doctrine"—which extends beyond the ministerial exception to "personnel decision[s] based on religious doctrine"—applied and barred her suit. *Id.* at 658-59 & n.2, 660.

And *Bryce* isn't alone. Other courts have also applied the church autonomy doctrine to bar employment claims against doctrinally grounded employment decisions when the employee wasn't a minister under *Hosanna-Tabor*. *See, e.g., Garrick v. Moody Bible Inst.,* 412 F. Supp. 3d 859, 871-73 (N.D. Ill. 2019) (applying Bryce's "religious autonomy" principle to dismiss challenged to doctrinally grounded employment decision); *Brazauskas v. Fort Wayne-S. Bend Diocese, Inc.,* 796 N.E. 2d 286, 293-94, 296 (Ind. 2003) (applying *Bryce*'s "church autonomy"

principle to bar tortious interference claim against diocese); *Butler v. St. Stanislas Kostka Cath. Acad.*, 609 F. Supp. 3d 184, 191 (E.D.N.Y. 2022) ("church autonomy … would mandate summary judgment" on Title VII claim "even if Butler had not been hired into a ministerial role").

*Bryce*'s analysis applies here too. McMahon's employment decision was based on her same-sex union, which violated World Vision's core religious beliefs on marriage. And its decision to withdraw her offer of employment was a quintessential "matter[] of church government." Allowing McMahon's claims to survive "would impermissibly inject … [the] government into [decisions on] religious doctrine and governance." *Garrick*, 412 F. Supp. 3d at 871-72; *see also Natal*, 878 F.2d at 1577 ("The principle is an important one, steeped in our tradition as well as in our jurisprudence": courts must avoid "tread[ing] on this forbidden terrain.").

The Court has repeatedly recognized the need to avoid inquiries that entangle courts in religious disputes. *NLRB v. Cath. Bishop of Chi.*, 440 U.S. 490, 501-02 (1979). Consider *Catholic Bishop*. There, the National Labor Relations Board ("Board") ordered two Catholic schools to collectively bargain with their lay teachers, *id.* at 495-96, but the Supreme Court barred the Board's action because it raised "serious

constitutional questions," *id.* at 501. Because resolving the dispute between the teachers and schools—especially when the schools claimed that their practices "were mandated by their religious creeds"—would "necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators and its relationship to the school's religious mission," the Court found the "very process of inquiry" into the dispute "may impinge on rights guaranteed by the Religion Clauses." *Id.* at 502.

The same entanglement concerns are in play here. To determine whether it was necessary for World Vision to withdraw McMahon's offer of employment because she could not comply with its SOCs would "necessarily involve [an] inquiry into the good faith the position [it] asserted … and its relationship to [World Vision]'s religious mission." *See id.* And that inquiry would no doubt "impermissibly inject … [the] government into [decisions on] religious doctrine and governance." *Garrick*, 412 F. Supp. 3d at 871-72. If religious organizations aren't free to uphold their core religious beliefs in their employment decisions, the Religion Clauses' promise of "independence in matters of faith and doctrine" and "internal govern[ance]" rings hollow. *Our Lady*, 591 U.S. at 746.

13

While the district court ultimately tried to avoid these issues by limiting the church autonomy doctrine to claims of pretext, courts have rejected an approach to the doctrine that would "essentially disregard what the employer"—a religious organization—"thought about its own organization and operations." *Sterlinkski v. Cath. Bishop of Chi.*, 934 F.3d 568, 570 (7th Cir. 2019); *see also Butler*, 609 F. Supp. 3d at 191 ("Butler was terminated for religious reasons, and the principle of church autonomy precludes a jury from questioning the veracity of those reasons … under the guise of pretext[.]").  To be sure, insisting that every employment decision was made on the basis of religious doctrine could raise concerns about "pretext," but World Vision's claim that it withdrew McMahon's offer because she could not comply with one of World Vision's core religious requirements (as reflected in its SOC) "is on solid ground." *Sterlinkski*, 934 F.3d at 570-71; *see also* 3-ER-436–37, ¶¶10-11.

## CONCLUSION

The district court's decision invites courts to engage in the sort of entangling inquiry into what is secular or religious that the church autonomy doctrine seeks to avoid.  *Sterlinkski*, 934 F.3d at 569-70; *see Grussgott v. Milwaukee Jewish Day Sch., Inc.*, 882 F.3d 655, 660 (7th Cir.

14

2018) ("drawing distinction between secular and religious teaching … is inappropriate" when it "involves the government challenging a religious institution's honest assertion that a particular practice is a tenet of its faith"); *Natal*, 878 F.2d at 1576 ("[W]e deem it beyond peradventure that civil courts cannot adjudicate disputes turning on church policy or administration or on religious doctrine and practice.").  Amici States urge this Court to reverse.

DATED this 28th day of August, 2024.

AUSTIN KNUDSEN
  *Montana Attorney General*

CHRISTIAN B. CORRIGAN
  *Solicitor General*

*/s/ Peter M. Torstensen, Jr.*
PETER M. TORSTENSEN, JR.
  *Deputy Solicitor General*
Montana Department of Justice
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
(406) 444-2026
christian.corrigan@mt.gov
peter.torstensen@mt.gov

*Counsel for Amicus Curiae*
*State of Montana*

15

ADDITIONAL COUNSEL

STEVE MARSHALL
*Attorney General of
Alabama*

TIM GRIFFIN
*Attorney General of
Arkansas*

ASHLEY MOODY
*Attorney General of
Florida*

RAÚL R. LABRADOR
*Attorney General of
Idaho*

BRENNA BIRD
*Attorney General of
Iowa*

KRIS KOBACH
*Attorney General of
Kansas*

LIZ MURRILL
*Attorney General of
Louisiana*

LYNN FITCH
*Attorney General of
Mississippi*

ANDREW BAILEY
*Attorney General of
Missouri*

MICHAEL T. HILGERS
*Attorney General of
Nebraska*

DAVE YOST
*Attorney General of
Ohio*

GENTNER F. DRUMMOND
*Attorney General of
Oklahoma*

ALAN WILSON
*Attorney General of
South Carolina*

JONATHAN SKRMETTI
*Attorney General and
Reporter of Tennessee*

KEN PAXTON
*Attorney General of
Texas*

SEAN D. REYES
*Attorney General of
Utah*

16

### CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, Peter M. Torstensen, Jr., an employee in the Office of the Attorney General of the Montana, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 2,695 words, excluding the parts of the document exempted by Rule 32(f), and complies with the typeface requirements and length limits of Rules 29 and 32(a)(5)–(7), and Circuit Rule 29-2(c)(3).

/s/ *Peter M. Torstensen, Jr.*
PETER M. TORSTENSEN, JR.