No. 24-3259

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Aubry McMahon,
        Plaintiff-Appellee,

v.

World Vision, Inc.,
        Defendant-Appellant.

On Appeal from the United States District Court
for the Western District of Washington

BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS AMICUS CURIAE IN SUPPORT OF
APPELLEE AND IN FAVOR OF AFFIRMANCE

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ANNE NOEL OCCHIALINO
Assistant General Counsel

GEORGINA C. YEOMANS
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2748
georgina.yeomans@eeoc.gov

# TABLE OF CONTENTS

Table of Contents ........................................................................ i

Table of Authorities .................................................................... ii

Statement of Interest .................................................................. 1

Statement of the Issues .............................................................. 1

Statement of the Case ................................................................ 2

    A.  Statement of the Facts ..................................................... 2

    B.  District Court's Decisions ................................................ 5

Argument .................................................................................... 7

    I.   World Vision is not exempt under Title VII, nor does it have a statutory defense to McMahon's sex-discrimination claim. ........................ 7

       A.   Title VII's statutory exemption for religious corporations does not apply ................................................................................ 8

       B.   McMahon's sex is not a BFOQ. ......................................... 17

    II.  This Court should reject World Vision's broad First-Amendment attacks on Title VII compliance. ........................................... 22

       A.   Compliance with Title VII does not violate World Vision's free exercise rights. .................................................................. 22

       B.   Compliance with Title VII does not violate World Vision's expressive association rights. ............................................ 27

Conclusion .................................................................................. 35

Certificate of Compliance ......................................................... 37

Certificate of Service ................................................................. 38

# TABLE OF AUTHORITIES

## Cases

*Ambat v. City & Cnty. of S.F.*,
   757 F.3d 1017 (9th Cir. 2014)……………………………………………18

*Bacon v. Woodward*,
   104 F.4th 744 (9th Cir. 2024) …………………………………………25, 26

*Bd. of Dir. of Rotary Int'l v. Rotary Club of Duarte*,
   481 U.S. 537 (1987) ……………………………………………………28, 33

*Billard v. Charlotte Cath. High Sch.*,
   101 F.4th 316 (4th Cir. 2024) …………………………………11, 15, 16, 17

*Bostock v. Clayton Cnty.*,
   590 U.S. 644 (2020) ………………………………………………………….7

*Boy Scouts of Am. v. Dale*,
   530 U.S. 640 (2000) …………………………………………29, 30, 33, 34

*Breiner v. Nev. Dep't of Corr.*,
   610 F.3d 1202 (9th Cir. 2010) ……………………………….………………18

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014) …………………………………………………………...29

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*,
   483 U.S. 327 (1987) …………………………………………………………...27

*Curay-Cramer v. Ursuline Acad. of Wilmington, Inc.*,
   450 F.3d 130 (3d Cir. 2006) ……………………………………………..11

*EEOC v. Assoc. of Cmty. Orgs. for Reform Now*,
   83 F.3d 418, 1996 WL 197411 (5th Cir. 1996) ……………………………33

*EEOC v. Cath. Univ. of Am.,*
    83 F.3d 455 (D.C. Cir. 1996) …………………………………………………27

*EEOC v. Fremont Christian Sch.,*
    781 F.2d 1362 (9th Cir. 1986) ………………………………….……9, 10, 17

*EEOC v. Miss. Coll.,*
    626 F.2d 477 (5th Cir. 1980) ………………………………..…...11, 12

*EEOC v. Pac. Press Pub. Ass'n,*
    676 F.2d 1272 (9th Cir. 1982) ………………………………………...10

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.,*
    82 F.4th 664 (9th Cir. 2023) ………………………………………….23, 24, 25

*Fulton v. City of Phila.,*
    593 U.S. 522 (2021) …………………………………………….22, 23, 24, 25

*Hall v. Baptist Mem'l Health Care Corp.,*
    215 F.3d 618 (6th Cir. 2000) ……………………………………………….10

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984) ……………………………………………...28, 32

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
    565 U.S. 171 (2012) …………………………………………...27, 34, 35

*Hunter v. U.S. Dep't of Educ.,*
    115 F.4th 955 (9th Cir. 2024) ………………………………………...26

*In re Egebjerg,*
    574 F.3d 1045 (9th Cir. 2009) ………………………………………...17

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.,*
    499 U.S. 187 (1991) ………………………………………...17, 18, 19

*Kennedy v. Bremerton Sch. Dist.,*
   597 U.S. 507 (2022) …………………………………………………....22

*Little v. Wuerl,*
   929 F.2d 944 (3d Cir. 1991) …………………………………………..10

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973) ……………………………………………………5

*Newman v. Piggie Park Enters., Inc.,*
   256 F. Supp. 941 (D.S.C. 1966), *rev'd* 377 F.2d 433 (4th Cir. 1967), *aff'd* 390
   U.S. 400 (1968) …………………………………………………………16

*Norwood v. Harrison,*
   431 U.S. 455 (1973) …………………………………………………....28

*Rayburn v. Gen. Conf. of Seventh-day Adventists,*
   772 F.2d 1164 (4th Cir. 1985) …………………………………………9

*Roberts v. U.S. Jaycees,*
   468 U.S. 609 (1984) ……………………………………...29, 30, 31, 32, 33

*Runyon v. McCrary,*
   427 U.S. 160 (1976) ……………………………………………………29, 30

*Killinger v. Samford Univ.,*
   113 F.3d 196 (11th Cir. 1997) ………………………………………..10

*Slattery v. Hochul,*
   61 F.4th 278 (2d Cir. 2023) …………………………………………...32

*Snyder v. Arconic, Corp.,*
   No. 23-3188, 2024 WL 3813173 (8th Cir. Aug. 14, 2024) ……………...13, 14

*Spencer v. World Vision, Inc.,*
   633 F.3d 723 (9th Cir. 2011) …………………………………………...8

iv

*Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*,
  496 F. Supp. 3d 1195 (S.D. Ind. 2020) …………………………………35

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ……………………………………………...27

*Tiano v. Dillard Dep't Stores, Inc.*,
  139 F.3d 679 (9th Cir. 1998) ……………………………………………..15

**Statutes**

42 U.S.C. § 2000e(b) ……………………………………………………24

42 U.S.C. § 2000e(j) ……………………………………………………...12

42 U.S.C. § 2000e-1(a) …………………………………………..*passim*

42 U.S.C. § 2000e-2(e)(1) …………………………………...6, 17, 19, 24

42 U.S.C. § 2000e-2(e)(2) …………………………………...23, 26, 27

42 U.S.C. § 2000e-2(f) …………………………………………………...24

42 U.S.C. § 2000e-2(i) …………………………………………………...24

42 U.S.C. § 2000gg-5(b) ………………………………………………16

**Other Authorities**

Brief for the Federal Respondent,
*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
  565 U.S. 171, 2011 WL 3319555 (Aug. 2, 2011) ……………………….34

EEOC Compliance Manual on Religious Discrimination (Jan. 15, 2021),
  *available at* https://www.eeoc.gov/laws/guidance/section-12-religious-
  discrimination……………………………………………........8, 9, 10, 27

## STATEMENT OF INTEREST

Congress charged the Equal Employment Opportunity Commission (EEOC) with administering and enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. This case involves the extent to which Title VII protects employees of religious organizations from sex discrimination. It also implicates whether First Amendment expressive association rights permit employers—whether religious or secular—to discriminate based on sex. It therefore has potentially far-reaching implications for the EEOC's future enforcement efforts and those of private parties seeking to vindicate their Title VII rights. Accordingly, the EEOC files this brief pursuant to Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE ISSUES[1]

1. Whether the district court correctly held, under binding Ninth Circuit precedent, that 42 U.S.C. § 2000e-1(a) does not exempt religious organizations from liability for sex discrimination.

2. Whether the district court correctly held that no jury could reasonably conclude that the plaintiff's sex, by way of her same-sex

---

[1] The EEOC takes no position on any other issue in the appeal.

1

marriage, is a Title VII bona fide occupational qualification (BFOQ) for the World Vision customer service representative position plaintiff sought.

3. Whether the district court correctly held that compliance with Title VII does not infringe on the defendant's free exercise of religion.

4. Whether the district court correctly held that compliance with Title VII does not infringe on the defendant's freedom of expressive association.

## STATEMENT OF THE CASE

### A.   Statement of the Facts

Plaintiff Aubry McMahon is a devoted Christian who was raised in the Methodist church. 2-ER-104. In 2020, she was laid off from her job, became pregnant via sperm donor, and married her then-girlfriend. 2-ER-108, 110, 132-33. In December of that year, she applied for Defendant World Vision's customer service representative opening. 2-ER-135. McMahon was excited about the prospect of working for World Vision because her family had donated to the organization in the past. 2-ER-135-36.

World Vision is a California nonprofit "Christian humanitarian organization" that helps "children, families, and their communities overcome poverty and injustice." 3-ER-481, 494. Its customer service representative job posting described the position as a remote job suitable

for a high school graduate or GED equivalent with "[b]asic routine work experience" and a high-speed internet connection. 3-ER-530. The position paid $13-15 per hour plus benefits and was contingent upon completion of nine to eleven weeks of training, during which time the customer service representative would "gain a working knowledge and understanding of the position and [how] to perform the essential functions of the job." *Id*. The job itself required good attendance, making calls to donors, and up-selling and cross-selling World Vision programs. 3-ER-531. It also required "[k]eeping Christ central in our individual and corporate lives," "[a]ttend[ing] and participat[ing] in the leadership of devotions, weekly Chapel services, and regular prayer," and being "sensitive to Donor's [*sic*] needs and pray[ing] with them when appropriate." *Id*.

World Vision hires only Christians, when possible, though it sometimes hires "people of other faiths – or people of no faith" outside the United States, where "there may not be qualified local Christians." 3-ER-598. World Vision's Christian employees "represent[] many Christian traditions and expressions," comprising a "diversity of biblically faithful backgrounds." 3-ER-549. World Vision's standards of conduct require, however, that employees "be in alignment" with "Biblically based

3

behavior," including by refraining from sexual conduct outside a heterosexual marriage. 3-ER-483.

McMahon successfully navigated World Vision's hiring process, including by affirming that she could comply with the standards of conduct. 3-ER-484. World Vision extended her an offer on January 4. 2-ER-336; 2-ER-352. Later that day, McMahon reached out via email to Catherine Miolla, a World Vision recruiter, writing, "My wife and I are expecting our first baby in March and I wanted to see if I would qualify for any time off for this since I'll be a new employee? I will be the one having the baby so I just wanted to check to see if any time would be allowed off. If not, no worries, thanks so much!" 3-ER-478. Miolla responded by asking McMahon "to discuss by phone." *Id*. Three days later, Miolla wrote, "I've tried several times to get in touch with you to discuss a discrepancy in your interview responses. Since I have not heard back from you to resolve the discrepancy, I am rescinding the job offer. . . ." 3-ER-479. McMahon spoke with Miolla by phone shortly thereafter and confirmed that World Vision was rescinding her offer because it learned she was in a same-sex marriage. 2-ER-159-61. World Vision agrees that it rescinded McMahon's offer because she is a woman married to a woman. 2-ER-260, 347-48.

4

### B. District Court's Decisions

McMahon sued World Vision for sex discrimination under Title VII and Washington state law. The district court initially granted summary judgment to World Vision on the ground that McMahon's sex-discrimination claim could not be adjudicated without infringing on World Vision's religious autonomy. The court assumed that McMahon had to satisfy a *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting analysis. It treated World Vision's explanation that McMahon's same-sex marriage violated its employment standards of conduct as a legitimate, nondiscriminatory reason that McMahon had to show was pretextual. 1-ER-91-92. Because, in the court's view, "the only way for the jury to find pretext would be to question World Vision's explanation of religious doctrine, or to question how much that particular religious doctrine really mattered to World Vision," the church autonomy doctrine barred McMahon's claim. 1-ER-96-97 (citation omitted).

McMahon moved for reconsideration, explaining that because World Vision admits it fired McMahon for being in a same-sex marriage, the burden-shifting framework does not apply. There is no need to gauge pretext and therefore no need to question World Vision's explanation of

5

religious doctrine. The district court agreed, recognizing that "World Vision's Biblical marriage [standards of conduct] is facially discriminatory under controlling precedent," leaving only the question of whether it enjoyed the protection of any affirmative defenses or exceptions to liability. 1-ER-65, 70. The court therefore vacated its final judgment and asked the parties to file renewed summary-judgment motions discussing World Vision's defenses.

Upon renewed motions, the district court granted summary judgment to McMahon, rejecting arguments that World Vision's conduct was lawful under Title VII's religious organization exemption (42 U.S.C. § 2000e-1(a)), church autonomy principles, or the ministerial exception; rejecting World Vision's argument that sex, by way of McMahon's marriage, is a BFOQ for the customer service representative position under 42 U.S.C. § 2000e-2(e)(1); and rejecting its argument that employing McMahon would impinge on World Vision's free exercise of religion and freedom of expressive association. 1-ER-6-52. The parties stipulated damages and the district court entered judgment for McMahon. World Vision appealed.

6

**ARGUMENT**

The parties agree that World Vision rescinded McMahon's job offer because she is in a same-sex marriage. Under *Bostock v. Clayton County*, 590 U.S. 644, 662 (2020), that is sex discrimination that violates Title VII. World Vision is therefore liable under Title VII unless it can establish a defense to or exemption from liability. The district court correctly rejected World Vision's arguments that it is exempt from liability under Title VII's § 2000e-1(a), that it has a Title VII defense under the BFOQ provision, that Title VII compliance violates its free exercise of religion, and that Title VII compliance violates its expressive association rights.

**I.    World Vision is not exempt under Title VII, nor does it have a statutory defense to McMahon's sex-discrimination claim.**

World Vision argues that it is exempt from McMahon's sex-discrimination claim under Title VII's religious organization exemption. It also argues that McMahon's sex is a BFOQ for the customer service representative position. Neither argument is supported by the record or binding or persuasive case law. We address each argument in turn.

7

## A. Title VII's statutory exemption for religious corporations does not apply.

World Vision argues that McMahon's claim falls within Title VII's statutory exemption for religious employers, 42 U.S.C. § 2000e-1(a). Circuit precedent forecloses the argument and World Vision's attempts to circumvent that precedent are unavailing.

Title VII does "not apply to . . . a religious corporation . . . with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation . . . of its activities." 42 U.S.C. § 2000e-1(a). This exemption allows "a qualifying religious organization to assert as a defense to a Title VII claim of discrimination or retaliation that it made the challenged employment decision on the basis of religion." EEOC Compliance Manual on Religious Discrimination (Religion Guidance) § 12-I.C.1 & n.67 (Jan. 15, 2021), *available at* https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination (citing cases). The parties agree that, under Ninth Circuit precedent, World Vision is a religious employer within the meaning of Title VII. *See Spencer v. World Vision, Inc.*, 633 F.3d 723, 723 (9th Cir. 2011).

8

World Vision argues that the § 2000e-1(a) exemption extends to cases like this, where the employer has discriminated against an employee because of sex. That is incorrect. "Religious organizations are subject to the Title VII prohibitions against discrimination on the basis of . . . sex." Religion Guidance § 12-I.C.1 & n.65 (citing cases); *see, e.g., Rayburn v. Gen. Conf. of Seventh-day Adventists*, 772 F.2d 1164, 1166-67 (4th Cir. 1985) (discussing legislative history and concluding "Congress plainly did not" generally exempt religious employers from Title VII).  Binding Ninth Circuit precedent affirms this reading of § 2000e-1(a).

In *EEOC v. Fremont Christian School*, this Court held that a religious employer could not refuse to provide health insurance to married women (while providing the benefit to all men and unmarried women) even though it held the religious belief that "only the man can be the head of the household" in a heterosexual marriage. 781 F.2d 1362, 1364-66 (9th Cir. 1986). Invoking Title VII's legislative history, this Court concluded the statutory exemption extends only to "discrimination based on religion," not to discrimination "'with regard to race, color, sex, or national origin,'" *id*. at 1366 (citation omitted), and therefore did not exempt the employer's conduct. That precedent is nearly indistinguishable from McMahon's sex-

9

discrimination claim here. In *Fremont Christian School*, the employer denied benefits to women for religious reasons based on their sex and relationship status; here, World Vision denied employment for religious reasons to a woman based on her sex and relationship status. *See also EEOC v. Pac. Press Pub. Ass'n*, 676 F.2d 1272, 1276-77 (9th Cir. 1982) (agreeing with "[e]very court that has considered Title VII's applicability to religious employers [and] conclud[ing] that Congress intended to prohibit religious organizations from discriminating among their employees on the basis of race, sex or national origin").[2]

A panel of this Court has no authority to depart from *Fremont Christian School*, nor is there reason to do so. "No federal appellate court in the country has embraced the . . . argument that Title VII permits religiously motivated sex discrimination by religious organizations." *Billard*

---

[2] EEOC's Religion Guidance explains, "Consistent with applicable EEO laws, the prerogative of a religious organization to employ individuals '"of a particular religion" . . . has been interpreted to include the decision to terminate an employee whose conduct or religious beliefs are inconsistent with those of its employer.'" Religion Guidance § 12-I.C.1 & n.77 (quoting *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 624 (6th Cir. 2000)). For support, it relies on three cases, each addressing Title VII religious-discrimination claims. *See id.* (citing *Hall*, 215 F.3d at 624; *Killinger v. Samford Univ.*, 113 F.3d 196, 200 (11th Cir. 1997); *Little v. Wuerl*, 929 F.2d 944, 951 (3d Cir. 1991)).

10

*v. Charlotte Cath. High Sch.*, 101 F.4th 316, 328 (4th Cir. 2024). And, contrary to World Vision's assertion, Appellant Br. at 47, *Bostock* did not abrogate Ninth Circuit precedent by declining to resolve "how . . . doctrines protecting religious liberty interact with Title VII," 590 U.S. at 682.

World Vision's claim, Appellant Br. at 45-46, that the Third Circuit accepted its broad interpretation of § 2000e-1(a) in *Curay-Cramer v. Ursuline Academy of Wilmington, Inc.*, 450 F.3d 130 (3d Cir. 2006), is wrong. In that case, the Third Circuit held that a discrimination claim whose resolution would require a court to assess the relative severity of "'offenses' against Catholic doctrine" would violate the First Amendment because it would require the court to weigh and compare religious teachings—a circumstance entirely absent from this case. 450 F.3d at 139. The court cautioned "religious employers against over-reading the impact of [its] holding," which left room for sex-discrimination claims against religious institutions where resolving the claim would not require the court to "compare the relative severity of violations of religious doctrine." *Id*. at 142.

Nor does *EEOC v. Mississippi College*, 626 F.2d 477 (5th Cir. 1980), support World Vision's interpretation of § 2000e-1(a). In that case, the Fifth Circuit noted it had "previously rejected the argument that the exemption

11

provided by [§ 2000e-1(a)] applies to all of the actions of a religious organization taken with respect to an employee whose work was connected with its 'religious activities.'" *Id*. at 484. It went on to hold only that "if a religious institution of the kind described in [§ 2000e-1(a)] presents *convincing evidence* that the challenged employment practice resulted from discrimination *on the basis of religion*, [§ 2000e-1(a)] deprives the EEOC of jurisdiction to investigate further to determine whether the religious discrimination was a pretext for some other form of discrimination." *Id*. at 485 (emphasis added).

In the absence of case law in its favor, World Vision attempts to shoehorn McMahon's sex-discrimination claim into the religious organization exemption by arguing that it rescinded McMahon's offer based on "*her* religious 'belief' and 'practice' contravening traditional marriage." Appellant Br. at 45 (emphasis added). It notes that Title VII defines "religion" to include "all aspects of religious observance and practice, as well as belief," 42 U.S.C. § 2000e(j), and asserts that the religious-employer exemption is triggered by employment decisions based on "*an employee's* particular religious beliefs or practices." Appellant Br. at 47. This argument fails because, apart from impermissibly recasting

12

McMahon's sex-discrimination claim as a religious-discrimination claim, it would require the court to conclude, without record support, that McMahon's same-sex marriage is a religious practice.

World Vision's specific objection is to McMahon's same-sex marriage, not her religious (or secular) beliefs about marriage or sexual orientation. That distinction is clear from record evidence establishing that World Vision would hire someone who supports same-sex marriage as long as that person was not part of one. 2-ER-256.[3] And that distinction is important because, as the Eighth Circuit recently explained, Title VII's prohibitions on religious discrimination encompass employee conduct only insofar as the employee's religion motivated the conduct. *See Snyder v. Arconic, Corp.*, No. 23-3188, 2024 WL 3813173, at *2 (8th Cir. Aug. 14, 2024). In *Snyder*, an employee's sincerely held religious belief that displaying a rainbow "as a sign for sexual gender" is "a[n] abomination to God" did not protect his conduct of posting that belief on a workplace message board

---

[3] World Vision would also hire a person with same-sex orientation, as long as World Vision did not learn of a violation of the standards of conduct. 3-ER-598; 2-ER-389; *see also* 2-ER-347 (World Vision does not ask prospective employees if they are "gay," but "just ask[s] the standards of conduct and ask[s] if they can comply"); 2-ER-389; SER-6 (Talbot testifying, "Being gay would not be the basis of rescinding a job offer.").

because he adduced no evidence that his conduct "was motivated by, or a part of, his religious beliefs." *Id*. In short, "his religion did not cause him to act as he did." *Id*.

Accepting World Vision's argument would require the court to conclude that McMahon's conduct in marrying a woman instead of a man was a religious practice. There is no record support for that claim. McMahon did not testify that she married a woman because of her religious beliefs. Instead, she decided to marry her partner because "it just felt right . . . wanting to spend the rest of my life with her." 2-ER-109. When asked whether "there [were] particular religious writings or teachings that [she] found helpful in deciding about what [she] believe[s] as part of [her] religious faith about marriage," she responded, "There really aren't." 2-ER-107. Her view of marriage from "a religious standpoint and personal standpoint . . . is just finding that person who you want to be by for the rest of your life." 2-ER-106.[4] In short, McMahon's view of the Bible did not

---

[4] McMahon agreed that she had "a religious ceremony within [her] own religious community and tradition." 2-ER-107. It was officiated by a minister but did not include any religious texts or readings. *Id*. But World Vision's objection is to the fact that McMahon married a woman, 3-ER-483, not to the details of McMahon's wedding ceremony.

14

*preclude* her relationship, but neither did it *cause* her relationship, which therefore was not a religious practice. World Vision's statutory argument thus fails on its own terms. *Cf. Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 682 (9th Cir. 1998) ("Title VII does not protect secular preferences.").

By way of this failed argument, World Vision essentially asks the court to define any employee conduct that conflicts with World Vision's religious beliefs as the employee's own religious practice, regardless of whether the employee ascribes such meaning to the conduct. Accepting this reframing would effectively permit World Vision to recast McMahon's sex-discrimination claim as a religious-discrimination claim, thereby slotting her sex-discrimination claim into the § 2000e-1(a) exemption. As courts have recognized in similar or analogous situations, accepting this argument could have far-ranging consequences. *See Billard*, 101 F.4th at 327-38 (noting counsel for defendant "confirmed at oral argument" that an analogous interpretation of § 2000e-1(a) would deprive "all employees of qualifying religious institutions . . . not only of Title VII's protections against religious discrimination, but also Title VII's protections against sex discrimination and, at least presumptively, those against race and national-origin discrimination"). It could allow religious employers to discriminate

15

on any protected basis if the discrimination was compelled by the employer's religious beliefs. For instance, a religious employer whose religious beliefs "compel him to oppose any integration of the races whatever," *Newman v. Piggie Park Enters., Inc.*, 256 F. Supp. 941, 944 (D.S.C. 1966), *rev'd* 377 F.2d 433 (4th Cir. 1967), *aff'd* 390 U.S. 400 (1968), could refuse to hire an applicant in an interracial marriage and, under World Vision's theory, would be entitled to do so without fear of Title VII liability if it recast the employee's marriage as the employee's own religious practice. The court should not entertain an argument with such "wide-ranging" implications. *Billard*, 101 F.4th at 327.

Finally, World Vision's argument that the Pregnant Workers Fairness Act's (PWFA) incorporation of § 2000e-1(a) into its rules of construction somehow amended or affected Title VII's meaning is incorrect. The PWFA, in a subsection entitled "Rule of construction," provides that the PWFA "is subject to the applicability to religious employment set forth in section 2000e-1(a) of this title." 42 U.S.C. § 2000gg-5(b). World Vision contends that provision of the PWFA "made clear that the exemption must apply to more than religious discrimination" under Title VII. Appellant Br. at 47-48. But nothing in the text of the PWFA amended Title VII, nor did it abrogate

16

*Fremont Christian Schools*. And of course, this Court "presume[s] that when Congress legislates, it is aware of past judicial interpretations and practices," *In re Egebjerg*, 574 F.3d 1045, 1050 (9th Cir. 2009), including the circuit court consensus that § 2000e-1(a) does not apply to sex-discrimination claims, *Billard*, 101 F.4th at 328. If Congress sought to upend that consensus regarding Title VII through enactment of the PWFA, it surely would have said so.

### B. McMahon's sex is not a BFOQ.

World Vision has not proffered evidence that McMahon's sex, and in particular her marriage to a woman, is a Title VII BFOQ for the customer service position.

Title VII provides a narrow defense to employers who can demonstrate that sex is a "bona fide occupational qualification reasonably necessary to the normal operation of [its] business." 42 U.S.C. § 2000e-2(e)(1); *see also Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 201 (1991) (emphasizing narrowness of defense). It applies only where the employer can prove that sex discrimination is necessary to achieving the "central mission of the employer's business," based on "objective, verifiable

17

requirements [that] concern job-related skills and aptitudes." *Id*. at 201, 203 (quotation marks omitted). To prevail on a BFOQ defense, the employer must prove "1) that the job qualification justifying the discrimination is reasonably necessary to the essence of its business; and 2) that sex is a legitimate proxy for the qualification because (a) [the employer] has a substantial basis for believing that all or nearly all [women] lack the qualification, or (b) it is impossible or highly impractical to insure by individual testing that its employees will have the necessary qualifications for the job." *Breiner v. Nev. Dep't of Corr.*, 610 F.3d 1202, 1210 (9th Cir. 2010) (cleaned up). Moreover, it is "impossible to prove a BFOQ defense without demonstrating that alternative approaches [to achieve the employer's central mission] are not viable." *Ambat v. City & Cnty. of S.F.*, 757 F.3d 1017, 1025 (9th Cir. 2014) (cleaned up).

World Vision argues that it "sincerely believes that a representative who refuses to comply with and defend its beliefs cannot effectively perform the role's religious duties" and that requiring it to "employ representatives in same-sex relationships would undercut its mission." Appellant Br. at 49. This argument, which again attempts to shoehorn

18

McMahon's sex, by way of her marriage, into a religious qualification, is an ill-fit.

World Vision cites no cases holding that not being in a same-sex relationship can constitute a BFOQ. But even assuming relationship status fits within the statutory meaning of § 2000e-2(e)(1), and assuming that sex could be a religious qualification, World Vision makes no effort to support its argument or to satisfy the statutory standard. World Vision cites no record evidence, let alone "objective, verifiable" "job-related skills and aptitudes" that McMahon could not perform. 499 U.S. at 201. It points to no evidence that McMahon's marriage would have come up in the course of her duties, or that she would have been tasked with "defend[ing]" World Vision's specific belief regarding marriage in her role as customer service representative. In fact, the record shows World Vision published a "messaging framework" asking staff to project a message inclusive of multiple faiths and secular audiences. 3-ER-426-31; *see also* 3-ER-622 (standards for communicating with donors). World Vision told all staff they should be able to speak to multiple Christian denominations, "multi-faith" audiences, "Islamic/Muslims," and "secular" individuals. 3-ER-428-31. In doing so, staff was instructed "not to manipulate other people's

19

faith." 3-ER-428. And again, World Vision did not require its staff to agree with World Vision's view on same-sex marriage or to identify as heterosexual; it simply prohibited being in a same-sex relationship.

Even if "defend[ing World Vision's] beliefs" regarding same-sex marriage were an "objective, verifiable" job requirement, World Vision has not shown that McMahon could not perform it. In its background section, World Vision claims McMahon testified she "'wouldn't be comfortable' defending its beliefs on marriage." Appellant Br. at 14. But that is a misrepresentation of the record, which shows the exact opposite. McMahon testified that if a caller asked her World Vision's position on marriage, she:

> would respond with their exact words of World Vision defines marriage between a man and a woman. And if they asked questions or there was any pushback . . . I would either seek direction from somebody higher up or just say that I wasn't sure how to answer that . . . that's something I wouldn't be comfortable answering, because I feel like that gets a little wishy washy *and I wouldn't want to say the wrong thing and turn somebody away or I wouldn't want to get in trouble*. So I would stick to the script, if you will.

2-ER-152 (emphasis added); *see also id*. at 151 (McMahon testifying she would "be fine with explaining" "what is World Vision's view on marriage" to "donors, people calling into the call center, or I guess maybe

20

other employees if they asked"); *id*. (McMahon "was okay with [World Vision] having these views"). Any discomfort stemmed from a lack of training (which McMahon would have been provided), not an inability based on sex or based on how her sex is manifested through her marriage.[5] Nor does World Vision explain how McMahon is presumptively uniquely ill-equipped to perform the customer service role when compared with individuals who are gay but not married or individuals who support same-sex marriage, both of whom World Vision would hire.

Because World Vision did not establish even a factual question as to whether it met its BFOQ burden, this Court should affirm the district court's summary judgment grant to McMahon on the defense.

---

[5] World Vision's brief ignores McMahon's clear testimony that, although her religious views did not preclude her relationship, she was respectful of others' different views. She testified, for example, that her brother may have religious opposition to her relationship, but "that's okay . . . he's allowed to believe what he wants to believe . . . . He's just being in his beliefs and I'll just be in mine and we can still – I love him to death." 2-ER-126; *see also* 2-ER-142 (McMahon explaining "I can validate and hear and understand World Vision's definition of religion . . . I can also have my own" beliefs).

## II. This Court should reject World Vision's broad First-Amendment attacks on Title VII compliance.

In addition to its statutory arguments, World Vision wields two broad First-Amendment arguments against liability in this case, each of which, if successful, would substantially undermine Title VII enforcement. We begin with World Vision's argument that enforcement of Title VII would violate its First-Amendment free exercise rights. We then turn to its contention that compliance with Title VII would violate its First-Amendment expressive association rights.

### A. Compliance with Title VII does not violate World Vision's free exercise rights.

Title VII is a neutral law of general applicability and therefore World Vision does not have a viable argument that the statute violates its free exercise of religion.

Under the First Amendment's free exercise clause, laws that burden religious exercise are subject to strict scrutiny unless they are neutral and generally applicable. *See Fulton v. City of Phila.*, 593 U.S. 522, 533 (2021). A neutral law is one that neither facially discriminates against religious practice nor has religious exercise as its object. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 526 (2022). A law is generally applicable unless it has a

mechanism for discretionary, individualized exemptions or if it "prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way," *Fulton*, 593 U.S. at 534.

An en banc panel of this Court recently announced a three-part test for determining whether a law that incidentally burdens religious exercise is neutral and generally applicable: (1) the challenged law "may not have a mechanism for individualized exemptions"; (2) the law "may not treat comparable secular activity more favorably than religious exercise"; and (3) "the government may not act in a manner hostile to religious beliefs or inconsistent with the Free Exercise Clause's bar on even subtle departures from neutrality." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 686 (9th Cir. 2023). Under this test, Title VII is neutral and generally applicable and therefore not subject to strict scrutiny.

1. Title VII contains no mechanism for individualized exemptions. Instead, it provides two types of categorical exemptions: one religious and one generally applicable. First, the law categorically exempts religious organizations and religious educational institutions from liability "with respect to the employment of individuals of a particular religion." 42 U.S.C. §§ 2000e-1(a), 2000e-2(e)(2). Second, Title VII categorically exempts all

23

employers with fewer than fifteen employees, *id*. § 2000e(b), employers on or near Indian reservations (as to the preferential treatment of Indians), *id*. § 2000e-2(i), and employers who discriminate against members of the Communist party, *id*. § 2000e-2(f). This second group of exemptions applies to all employers, regardless of whether they are secular or religious. No government entity has discretion in administering these exemptions. *Cf. Fellowship of Christian Athletes*, 82 F.4th at 687 (challenged policies "not generally applicable because the [government] retains discretion to grant individualized exemptions"); *Fulton*, 593 U.S. at 544 (Barrett, J., concurring) (stressing that strict scrutiny was triggered by the "individualized exemptions from [the government contract's] nondiscrimination rule").

World Vision argues that Title VII's narrow BFOQ defense is a "discretionary" exemption that renders the law not generally applicable. Appellant Br. at 60. As discussed above, under that defense, a covered employer may discriminate based on religion, sex, or national origin when it can show the protected characteristic "is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. § 2000e-2(e)(1). World Vision does not attribute discretionary decisionmaking authority under the BFOQ

24

to any particular government actor. Appellant Br. at 60 ("BFOQ defenses
. . . excus[e] discrimination *if it is deemed* 'reasonably necessary'" (emphasis
added)). Nor could it. No government actor has discretion in administering
the BFOQ defense; rather, the employer must make the required
evidentiary showing in court. It bears no resemblance to the government
discretion in cases like *Fulton* and *Fellowship of Christian Athletes*. *See Fulton*,
593 U.S. at 535 (granting "sole discretion" to "Commissioner or the
Commissioner's designee" to grant an "exception" to statute's
nondiscrimination provision); *Fellowship of Christian Athletes*, 82 F.4th at 687
(noting District "retains (and exercises) significant discretion in applying
exceptions to its own programs, as well as to student programs"). And
World Vision's argument would presumably extend to any statutory
defense to liability that depends upon the defendant's evidentiary
showing.

2. Nor does Title VII "treat comparable secular activity more
favorably than religious exercise." 82 F.4th at 686 (alteration omitted).
There is no circumstance in which Title VII would ban a religious
employer's conduct but would not ban a comparable secular employer's
identical conduct. *Cf. Bacon v. Woodward*, 104 F.4th 744, 751-52 (9th Cir.

25

2024) (finding policy not generally applicable where it exempted some firefighters from vaccination requirement based on secular criteria but held religious exemption requests to a higher standard).

The religious exercise at issue here is World Vision's desire to exclude from employment individuals in same-sex marriages pursuant to its belief that sexual conduct should be confined to heterosexual marriage. As discussed above, World Vision's conduct is sex discrimination. Title VII does not permit any covered employer, secular or otherwise, to engage in this conduct. *See* 42 U.S.C. § 2000e-2(a)(1). While employers who fall outside Title VII's coverage are free to discriminate based on sex, that is true of secular and religious employers alike. The fact that some employers but not others fall outside the statute's coverage does not undermine its neutrality. *Cf. Hunter v. U.S. Dep't of Educ.*, 115 F.4th 955, 967 (9th Cir. 2024) (finding neutral Title IX's provision exempting from coverage any institution *to which it applies*).

3. Finally, Title VII is not hostile to religion. Indeed, it protects employees from religious discrimination, 42 U.S.C. § 2000e-2(a)(1), and, as discussed above, it includes exemptions to the prohibition on religious discrimination for religious employers, 42 U.S.C. §§ 2000e-1(a), 2000e-

2(e)(2); *see generally* Religion Guidance § 12-I.C.1. It does not "suppress, target, or single out the practice of any religion because of religious content." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1131 (9th Cir. 2009).

This Court should therefore affirm the district court's reasoned judgment that Title VII is a neutral law of general applicability and therefore not subject to strict scrutiny. *See, e.g.*, *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 190 (2012) (stating in dicta that the Americans with Disabilities Act's anti-retaliation provision, which (like Title VII) exempts certain employers for secular reasons, "is a valid and neutral law of general applicability"); *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 339 (1987) (discussing § 2000e-1(a) and calling Title VII "neutral on its face and motivated by a permissible purpose of limiting governmental interference with the exercise of religion"); *EEOC v. Cath. Univ. of Am.*, 83 F.3d 455, 467 (D.C. Cir. 1996) (Title VII is "neutral law of general application").

## B. Compliance with Title VII does not violate World Vision's expressive association rights.

World Vision claims that complying with Title VII in this instance would violate its First Amendment expressive association rights. This

27

argument fails for at least two reasons. First, the Supreme Court has already said that there is no expressive association right to discriminate based on sex in the Title VII context. And second, even if there were such a right, World Vision cannot establish the requisite showing that hiring McMahon would significantly burden its advocacy. This Court should reject World Vision's invitation to expand First-Amendment doctrine; doing otherwise would drastically undermine Title VII protections for all covered, private-sector employees, not just those working at religious organizations.

1. The Supreme Court in *Hishon v. King & Spalding*, 467 U.S. 69 (1984), rejected the very argument World Vision advances here—that there is a First Amendment expressive-association right to discriminate based on sex. The Court explained that "[i]nvidious private discrimination may be characterized as a form of exercising freedom of association protected by the First Amendment, but it has never been accorded affirmative constitutional protections." *Id.* at 78 (alteration in original) (quoting *Norwood v. Harrison*, 431 U.S. 455, 470 (1973)); *see also Bd. of Dir. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987) (any "slight infringement" on "members' right of expressive association . . . is justified

28

because it serves the State's compelling interest in eliminating discrimination against women"); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984) ("eradicating discrimination against" women "justifies" potential impact on respondent's speech); *cf. Runyon v. McCrary*, 427 U.S. 160, 176 (1976) (First Amendment does not protect racial discrimination); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733 (2014) ("The Government has a compelling interest in providing an equal opportunity to participate in the workforce without regard to race, and prohibitions on racial discrimination are precisely tailored to achieve that critical goal."). There is no reason or basis to depart from that rule here.

2. Even setting that precedent aside, World Vision has not shown that hiring McMahon would significantly affect its ability to express its views. The First Amendment protects against "[t]he forced inclusion of an unwanted person in a group . . . if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). This protection is "not absolute." *Id.* It requires a threshold showing that the challenged inclusion actually "serious[ly] burdens" the group's expressive association by "imped[ing] the organization's ability to engage in [its]

29

protected activities or to disseminate its preferred views." *Roberts*, 468 U.S. at 626-27; *see also Dale*, 530 U.S. at 653 (asking for evidence of a "significant[] burden"). And even upon such a showing, "[i]nfringements . . . may be justified by regulations adopted to serve compelling state interests . . . that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 U.S. at 623.

Importantly, the freedom of expressive association does not protect a group's bare desire to exclude certain protected groups. *See Runyon*, 427 U.S. at 176 (school had First Amendment right to promote the "belief that racial segregation is desirable," but could not "exclud[e] racial minorities from such institutions"). "[A]n expressive association can[not] erect a shield against antidiscrimination laws simply by asserting that mere acceptance of a member from a particular group would impair its message." *Dale*, 530 U.S. at 653. The group must produce evidence that inclusion would significantly affect its ability to advocate its viewpoints.

*Roberts* is illustrative of this principle. In that case, the Supreme Court confronted a "conflict between a State's efforts to eliminate gender-based discrimination against its citizens and the constitutional freedom of association asserted by members of a private organization" and held that

30

the nondiscrimination law prevailed. The Jaycees—an organization whose objective was to "promote and foster the growth and development of young men's civic organizations in the United States"—resisted compliance with an anti-discrimination law that required the Jaycees to admit women as full, voting members. 468 U.S. at 612, 614. The Jaycees argued that compliance with the antidiscrimination law would violate its First-Amendment associational rights. The Court rejected that argument. The Court began by holding that the antidiscrimination law was a narrowly tailored law geared toward advancing the state's compelling interest in eradicating sex discrimination in public accommodations. *Id*. at 623-26. But the Court also held that the Jaycees "failed to demonstrate that the Act impose[d] any serious burdens on the male members' freedom of expressive association." *Id*. at 626. Assuming "the Jaycees is organized to promote the views of young men whatever those views happen to be," the Jaycees had not shown, with evidence, that conferring voting rights on women would actually change the content of its message. *Id*. at 627-28. The group could not resist women's inclusion based on "unsupported generalizations" or "assumptions" about women's views or how they would vote on issues important to the Jaycees. *Id*. And "any claim that

31

admission of women as full voting members will impair a symbolic message conveyed by the very fact that women are not permitted to vote [was] attenuated at best." *Id*. at 627.

World Vision's expressive association argument similarly fails because of its failure to develop and rely on actual evidence regarding how hiring McMahon would significantly affect its public or private advocacy. World Vision relies in part on *Slattery v. Hochul*, 61 F.4th 278 (2d Cir. 2023). In that case, the employer, which operated crisis pregnancy centers, objected to enforcement of a state law that would prohibit it from discriminating against employees based on their reproductive health decision making. The Second Circuit held that requiring the employer to "employ individuals who act or have acted against the very mission of" the organization by obtaining abortions would violate the employer's expressive association rights. *Id*. at 288. Aside from being non-binding on this Court and failing to grapple with *Hishon*, *Slattery* does not help World Vision. Unlike the employer in *Slattery*, World Vision does not point to evidence that opposition to same-sex marriage is a part of World Vision's mission. In the record, World Vision discusses its opposition to same-sex marriage only in reference to its staff standards of conduct.

32

And second, even if World Vision had shown that opposition to same-sex marriage is part of its organizational mission, World Vision does not explain, let alone demonstrate with evidence, how employing McMahon would significantly affect its ability to convey any such message. There is no evidence that McMahon would ever discuss her own marriage with World Vision's customers or that customers would otherwise know McMahon was in a same-sex marriage, and McMahon testified that she was willing to "advocate" World Vision's views on marriage to those who asked her. That evidentiary failure is fatal to World Vision's expressive association claim. *See Duarte*, 481 U.S. at 548 (club's failure to demonstrate that admitting women "will affect in any significant way the existing members' ability to carry out their various purposes" defeated First Amendment associational claim); *Roberts*, 468 U.S. at 627 (symbolic exclusion is not protected expression); *cf. EEOC v. Assoc. of Cmty. Orgs. for Reform Now*, 83 F.3d 418, 1996 WL 197411, at *4 (5th Cir. 1996) (unpublished) (rejecting employer's expressive association defense to Title VII requirements where employer did not "demonstrate how compliance . . . would in any way impede its advocacy activities").

33

World Vision relies heavily on *Dale*, but *Dale* is distinguishable. In *Dale*, the Boy Scouts' mission included instilling certain values in its members, including, according to the Boy Scouts, the belief that "homosexual conduct is not morally straight." 530 U.S. at 649, 651. And as an assistant scoutmaster, Dale, who was gay, and who had publicly advocated "homosexual teenagers' need for gay role models," would be responsible for instilling the Boy Scouts' very values in its members. *Id*. at 645, 649-50. The Boy Scouts thereby connected Dale's organizational responsibilities in carrying out the group's mission to his sexual orientation. World Vision simply has not made a similar showing that hiring McMahon would burden its work. *See supra* section I.B. (discussing BFOQ).

World Vision's citation to the United States' brief in *Hosanna-Tabor* is also not to the contrary. In *Hosanna-Tabor*, the United States posited only that the right to expressive association would protect a church against forced inclusion of women as clergy if the church expressed a "religious message that only men are spiritually eligible for such positions." Brief for the Federal Respondent, *Hosanna-Tabor*, 565 U.S. 171, 2011 WL 3319555, at *12 (Aug. 2, 2011). But in that very case, the Supreme Court declined to

34

couch its protection of church clergy-selection decisionmaking in expressive associational terms, instead adopting the ministerial exception. 565 U.S. at 190-91. And as at least one court has observed, "[i]f freedom of association applies in the religious employment context, the ministerial exception is unnecessary." *Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*, 496 F. Supp. 3d 1195, 1209 (S.D. Ind. 2020).

This Court should not extend the freedom of expressive association beyond the bounds the Supreme Court has demarcated. Doing so would significantly undermine workplace antidiscrimination protections.

## CONCLUSION

For the foregoing reasons, this Court should reject World Vision's Title VII statutory arguments, its free exercise argument, and its expressive association argument.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ANNE NOEL OCCHIALINO
Assistant General Counsel

35

s/*Georgina C. Yeomans*
GEORGINA C. YEOMANS
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2748
georgina.yeomans@eeoc.gov

October 28, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-3259

I am the attorney or self-represented party.

**This brief contains** | 6,987 | **words,** including | 0 | words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

⦿ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.

☐ a party or parties are filing a single brief in response to multiple briefs.

☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Georgina C. Yeomans | **Date** | October 28, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/22*

**CERTIFICATE OF SERVICE**

I certify that on October 28, 2024, I electronically filed the foregoing

brief in PDF format with the Clerk of Court via the appellate CM/ECF

system. I certify that all counsel of record are registered CM/ECF users,

and service will be accomplished via the appellate CM/ECF system.

s/*Georgina C. Yeomans*
GEORGINA C. YEOMANS
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2748
georgina.yeomans@eeoc.gov